IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| DUNHILL RESOURCES, INC. | § | CASE NO. 03-41264-H2-7 |
| _____ | § | |
| | § | |
| JEFFREY A. COMPTON, TRUSTEE | § | |
| | § | |
| VS. | § | ADVERSARY NO. 05-3260 |
| | § | |
| C & G BOATS, INC. | § | |

## MEMORANDUM OPINION
## FINDINGS AND CONCLUSIONS

In this adversary proceeding, Jeffrey A. Compton ("Plaintiff"), Chapter 7 Trustee of the Estate of Dunhill Resources, Inc., ("Debtor") seeks to avoid and to recover alleged preferential transfers made to C & G Boats, Inc. ("Defendant"). The Court has previously granted partial summary judgment in favor of Plaintiff on all issues except Defendant's assertion that it is not an "initial transferee"(*i.e.* the "conduit defense"). Defendant argues that since it was merely a conduit for funds payable to a subcontractor, Plaintiff cannot recover under Bankruptcy Code § 550 which only allows the Plaintiff to recover from "initial transferees". After trial on September 12, and for reasons set forth below, the Court concludes that the Defendant was an initial transferee and therefore the Court has, by separate document, issued a final judgment in favor of Plaintiff.

### JURISDICTION

This is an adversary proceeding, a civil proceeding, arising in a case under title 11 and arising under title 11 of the United States Code. The United States District Court has jurisdiction under 28 U.S.C. § 1334(b) and (e). By Order dated August 9, 1984, superceded by General Order 2005-6 on March 10, 2005, under authority granted by 28 U.S.C. § 157(a), the United States District Court for the Southern District of Texas referred all such proceedings to the bankruptcy judges for the district. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(F). The bankruptcy judge may hear and may determine core proceedings, 28 U.S.C. 157(b)(1). No party has objected to the exercise of core jurisdiction by the undersigned bankruptcy judge.

### FACTS

Defendant contracted to provide marine vessels to Debtor for use in oil field operations.

The relationship was set out in the Master Service Agreement[1] executed by Debtor and Defendant on May 1, 2002. Under the Master Service Agreement as implemented by the parties, Defendant would provide its own vessels[2] or, if none were available, Defendant would engage third party vessels to meet Debtor's needs. No agreement was made between Debtor and any third party vessel owner. When Defendant engaged vessels owned by third parties, the operator of those vessels would issue an invoice to Defendant who would then issue its own invoice to Debtor for all vessel rental charges. Defendant would add a charge of $150 per day for vessels that it engaged from operators who were not its affiliates.

This adversary proceeding seeks avoidance and recovery of two payments that Debtor made to Defendant totaling $75,262.50 for services that Defendant contracted from a third party, Gulf Marine.

The first challenged payment is a check dated June 10, 2003 for $25,262.50 in payment of Defendant's invoice dated January 27, 2003. Defendant had paid Gulf Marine $21,500 of this sum prior to the payment by Debtor.[3]

The second challenged payment is a check dated July 22, 2003 for $50,000 in payment of Defendant's invoices dated February 17, 2003. Defendant had paid Gulf Marine $38,000 of this sum prior to the payment by Debtor.[4]

Both of Debtor's checks were deposited by the Defendant into its general operating account. Defendant maintained no separate escrow or trust account related to Debtor or to Gulf Marine.

Debtor was obligated under the terms of the invoice issued by Defendant to pay Defendant within 30 days of invoice. Defendant was obligated under the terms of the invoice issued by Gulf Marine to pay Gulf Marine's within 90 days of invoice. Thus, under the payment terms defined by the parties, if Defendant promptly invoiced Debtor then Defendant was entitled to payment 60 days prior to the date that it was obligated to pay the third party. Both Defendant and Debtor often strayed from the respective payment terms.

LEGAL ANALYSIS

Since partial summary judgment has previously been issued on all other matters, the only issue before the Court is whether Defendant is an "initial transferee." 11 U.S.C. provides:

---

[1] Joint Exhibit # 2.

[2] The term "its own vessels" means vessels owned by Defendant or by affiliated companies.

[3] Joint Exhibit ## 12 and 28.

[4] Joint Exhibit ## 16, 21, 29, and 30.

> (a) ...the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from -
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>> (2) any immediate or mediate transferee of such initial transferee.
>
> 11 U.S.C. § 547.

"Initial transferee" is not explicitly defined by the Bankruptcy Code. In *Coutee v. Brunson*, 984 F.2d 138 (5th Cir. 1993), the Fifth Circuit adopted the "dominion or control" test to determine whether a party is an initial transferee. In *Coutee*, a plaintiff's law firm guaranteed a loan to its clients. The clients received a check in satisfaction of the judgment and endorsed the check to the law firm. The law firm then deposited the check into its trust account. The law firm deducted the amount of its legal fees and paid the remaining funds over to the bank on behalf of the Coutees in full satisfaction of the loan. Within 90 days of making that payment, the clients filed a chapter 7 bankruptcy petition. The trustee filed a complaint against the bank seeking to recover the alleged preferential transfer. The bank argued that the law firm, not it, was the initial transferee under § 550 because the award was initially endorsed to the law firm. The Fifth Circuit held that the bank was the initial transferee. Even though the law firm received the funds initially, the law firm did not have dominion or control over the funds.

> Adopting the dominion or control test, we find that the bank, not the firm, was the initial transferee of the funds... The only control exercised over the funds was the control delegated to the law firm by the Coutees... The law firm had no legal right to put the funds to its own use, and thus lacked the requisite dominion required to be the initial transferee. *Id.* at 141.

In the adversary at hand, Debtor had no contractual relationship with Gulf Marine. Defendant was obligated to make payment to Gulf Marine whether or not payment was received by the Debtor. When Debtor made payment on Defendant's invoice, it was in satisfaction of its debt to Defendant under the terms of the Master Service Agreement. Defendant was not obligated to forward payment to Gulf Marine. Defendant was the principal, the only entity required to pay Gulf Marine. Indeed, Defendant had already paid most of the debt to Gulf Marine by the time that Defendant received the payments from Debtor.

The contractual documents, the invoice "terms of payment", and the payment history of the parties show there was no restriction on Defendant's legal right to put the funds to its own use. When Debtor's payment were timely, the funds could remain in Defendant's general operating account for as much as 60 days before payment to Gulf Marine was due, leaving Defendant free to apply the money to other business operation expenses.[5] Conversely, when Debtor did not pay timely, Defendant sometimes paid Gulf Marine before receiving Debtor's

---

[5] Although Defendant testified that it's business practice was to forward the payments immediately upon receipt, there was no obligation to do so and Defendant's business practices show that this was not always done.

payment.  Defendant's record show no consistent payment schedule.  Late payments from Debtor (received by Defendant after Defendant had paid Gulf Marine) were available for use by Defendant, free from restriction.  Once Defendant had fulfilled its obligation to Gulf Marine, the Defendant had no legal duty or relationship controlling the disposition of any funds received from Debtor.  Defendant had control and dominion over the funds.

Defendant cites an Eleventh Circuit opinion suggesting that the Court "step back and evaluate a transaction in its entirety to make sure the conclusions are logical and equitable." *Andreini & Co. v. Pony Express Delivery Servs.*, 440 F3d 1296 (11th Cir. 2006).  But *Pony Express* is not on point; that case involved a client trust account.  In the case at hand, funds were deposited in a general operating account, mostly after the debt to Gulf Marine had been paid, and the funds were generally available to Defendant for any purpose to which management chose to apply them.

But even with respect to the more general concept of evaluation of a transaction "in its entirety", Defendant's argument is not sound.  Defendant has essentially asked the Court to limit the Trustee's recovery to the Defendant's profits, the amount by which Debtor's payment to Defendant exceeded Defendant's costs or obligation to pay Gulf Marine.  First, the statute does not articulate that rule.  Therefore, no matter what the policy reason, the Court has no authority to create a judicial exception.  Second, each creditor who received a preference (*i.e.* a greater percentage of its claim than other creditors in the 90 days preceding bankruptcy) had costs associated with its claim; the only difference between Defendant's "costs" and the expenses of other creditors similarly situated is that Defendant's costs are more easily identified.  Bankruptcy policy for recovery of preferences is intended to equalize the payments to creditors in the 90 days preceding bankruptcy, as a percentage of their debts.  The concept is to assure that the percentage of debt paid to each creditor is relatively equal.  Bankruptcy policy focuses on the amount of debt paid, and has no reference to the creditor's cost in creating the claim, or account receivable.  Preferential transfers are recovered without regard of the business expenses incurred in the underlying transaction.  The Court finds no authority or reason to limit what is recovered from Defendant.

*Pony Express* also looked to the intent of the defendant in becoming a creditor of the debtor, but *Coutee* controls in the Fifth Circuit.  This Court must look to whether Defendant had control or dominion over the funds.  *Coutee* discusses the legal rights of the defendant and what control debtor had delegated to him with regard to the funds.  984 F.2d 138, at 141.  The intent of the defendant is not determinative.

*Pony Express* is further distinguishable from the instant case on the facts.  The defendant insurance broker in that case had a general business policy to pay its clients' insurance premiums when they were due, so that insurance coverage would not lapse.  440 F.3d 1296, at 1302.  Although Defendant testified that it was contractually obligated to keep the job "lien free" and to hold Debtor harmless from claims of third parties, Defendant's business practice showed that it did not always follow that policy.  Payments were frequently past due.  Sometimes Defendant paid Gulf Marine out of pocket before receiving payment from Debtor.  Sometimes it did not.  The inconsistent business practice makes the testimony about business practice not credible.

Courts have typically found the recipient of a prepetition payment to be a conduit only in cases where the equitable ownership of the payment is clearly identified as resting in some party other than the one who deposited the check. The most common examples of these cases involve parties that are operating in areas where the relationship between the defendant and the debtor is highly regulated such as attorneys with escrow accounts, insurance brokers with client trust accounts, and banks with depository accounts. *See, Coutee v. Brunson*, 984 F.2d 138 (5th Cir. 1993) (discussed above); *Pony Express*, 440 F.3d 1296 (11th Cir. 2006) (finding insurance broker a conduit when he forwarded premium payments after receipt of check but before it cleared); *Bonded Financial Services, Inc. v. European American*, 838 F.2d 890 (7th Cir. 1988) (finding depository bank as financial intermediary which held check only for purpose of fulfilling an instruction to make funds available to someone else). In each of these relationships, the nominal recipient of the funds was not entitled to the benefit of the funds; as the Fifth Circuit put it, the recipient did not have "dominion or control." In the case at hand, Defendant is better analogized to an independent contractor who had subcontracted work out to Gulf Marine, rather than an agent who entered into contracts on Debtor's behalf.

## CONCLUSION

Because the Court finds that Defendant had dominion and control over the funds it received from the Debtor, the Court finds under the Fifth Circuit test in *Coutee* that Defendant is not a conduit. Defendant is an initial transferee from whom Plaintiff can recover.

September 14, 2006

*Wesley W. Steen*